JAMES EDWARD BULFIN, Plaintiff-Appellant, v. ELI LILLY & COM-
PANY *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—92—0654

Opinion filed April 8, 1993.

William E. Hourigan, of Bloomington, for appellant.

Coffield, Ungaretti & Harris, of Chicago (Barbara J. Anderson and J. Timothy Eaton, of counsel), for appellee The Upjohn Company.

Horvath, Lieber & Quilici, of Chicago (Howard L. Lieber and Mary M. McCarthy, of counsel), for appellee A. Pena.

Wildman, Harrold, Allen & Dixon, of Chicago (Richard C. Bartelt, Richard C. Palmer, and Jeanne Walker, of counsel), and John L. McGoldrick, John Garde, and Rosalie Burrows, all of McCarter & English, of Newark, New Jersey, for appellee Eli Lilly & Company.

JUSTICE HOFFMAN delivered the opinion of the court:

Plaintiff, James Edward Bulfin, appeals from an order dismissing his complaint under section 2—619(a)(4) of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—619(a)(4)). In dismissing the instant action, the trial court found that plaintiff is collaterally estopped from seeking damages against defendants, Eli Lilly & Company (Eli Lilly), Upjohn Company (Upjohn), Dr. A. Pena (Pena), and Blue Cross & Blue Shield (Blue Cross). For the following reasons, we affirm.

On October 15, 1988, in Scottsdale, Arizona, plaintiff, James Edward Bulfin, shot and killed Harold Arthur MacNevins, and shot and injured Faith Simmons and Bernard Simmons. Plaintiff had travelled from Illinois to Arizona, bringing with him the pistol that he used on October 15, 1988.

Plaintiff was indicted in Arizona for one count of murder in the second degree and two counts of attempted murder in the first degree. During the pretrial stages of the criminal proceedings in Arizona, plaintiff indicated that he intended to raise the defenses of insanity, diminished mental capacity, and involuntary intoxication. Plaintiff subsequently negotiated a plea agreement, and on August 9, 1989, pled guilty to one count of manslaughter and two counts of aggravated assault. The guilty plea was an "Alford plea" (see North Carolina v. Alford (1970), 400 U.S. 25, 27 L. Ed. 2d 162, 91 S. Ct. 160), whereby plaintiff consented to the entry of judgment without a

trial, declined to provide the trial court with any factual basis for the guilty plea, but maintained his innocence.

When plaintiff pled guilty, the Arizona trial court determined that he had read and fully understood the terms of his plea agreement; it then received the factual foundation for the guilty plea and determined that the plaintiff had no disagreement with the essential facts as related by the prosecutor. The court deferred any finding on the plea until September 22, 1989. When the parties reconvened on September 22, 1989, the court accepted plaintiff's plea of guilty to the reduced charges and sentenced him to 7½ years' imprisonment. Plaintiff did not file a direct appeal from his conviction and did not seek post-conviction relief.

On September 6, 1990, plaintiff filed the instant action. In his second-amended complaint, plaintiff sought recovery against Upjohn, the manufacturer of the drug Xanex; Eli Lilly, the manufacturer of the drug Prozac; Pena, the Illinois physician who prescribed Xanex and Prozac for him; and Blue Cross, the Illinois health maintenance organization which required plaintiff to use the services of Pena. Plaintiff charged that Upjohn and Eli Lilly had negligently, willfully and wantonly, and fraudulently marketed Xanex and Prozac, respectively, without regard for the known adverse side effects of the drugs. Plaintiff alleged that Pena was aware of the adverse side effects of Xanex and Prozac and was negligent in prescribing them and failing to advise plaintiff of the risks related to the drugs. Finally, plaintiff charged Blue Cross with negligently requiring that he use the services of Pena, who, according to plaintiff, was not skilled and knowledgeable in the combined effects of Xanex and Prozac. Plaintiff further alleged that on October 15, 1988, as a consequence of the wrongful acts or omissions of defendants, he suffered involuntary drug-induced intoxication and then, through no fault of his own, shot and killed Mr. MacNevins and shot and wounded Mr. and Mrs. Simmons. The proximate result of these occurrences was his incarceration in the Arizona penitentiary.

In response to plaintiff's second-amended complaint, Upjohn filed a motion for involuntary dismissal pursuant to Code of Civil Procedure section 2—619. Upjohn maintained that plaintiff was collaterally estopped from bringing his action because he had pled guilty in the Arizona criminal proceeding. All of the defendants, except Walgreen Company, joined Upjohn in the motion. Plaintiff voluntarily dismissed Walgreen Company from the action and that dismissal is not pertinent to this appeal.

On September 3, 1991, the trial court granted defendants' motions and dismissed plaintiff's action. On January 27, 1992, plaintiff's motion to reconsider was denied, and the instant appeal followed.

OPINION

Plaintiff raises four issues on appeal: first, the trial court erred in applying Arizona law to determine the collateral estoppel effect of plaintiff's conviction; second, assuming, *arguendo*, that Arizona law on collateral estoppel should be applied, the trial court incorrectly interpreted that law; third, Illinois law precludes the application of the doctrine of collateral estoppel in this case; and fourth, applying collateral estoppel to this case violates the public policy of Illinois. We find no merit in any of these contentions for the reasons that follow.

■■ The law of the State where a foreign judgment was rendered determines its collateral estoppel effect. (*Mohn v. International Vermiculite Co.* (1986), 147 Ill. App. 3d 717, 720, 498 N.E.2d 375.) The Restatement (Second) Conflict of Laws explains that when considering whether to apply collateral estoppel based on a prior foreign judgment, "[w]hat issues are determined by a valid judgment is determined, subject to constitutional limitations, by the local law of the State where the judgment was rendered." (Restatement (Second) Conflict of Laws §95 (1971).) Moreover, comment *g* to section 95 makes it clear that the law of the State in which a judgment is rendered determines, also subject to constitutional limitation, the effect of the judgment for collateral estoppel purposes in a later suit in another jurisdiction. (Restatement (Second) Conflict of Laws §95, Comment *g*, at 286 (1971).) As such, the trial court properly looked to Arizona law to determine the collateral estoppel effect of plaintiff's conviction in Arizona.

■■ Plaintiff next contends that the court incorrectly determined that Arizona laws of collateral estoppel barred his claim.

Illinois and Arizona apply essentially the same rules to the doctrine of collateral estoppel. When asserted as a defense, the doctrine of collateral estoppel requires the defendant to establish (1) that the issue decided in the prior action was identical to the one presented in the suit in question; (2) that a court of competent jurisdiction rendered a final judgment on the merits in the prior action; (3) that the party against whom the doctrine is asserted was a party to the prior action or in privity with such a party; and (4) that the factual issue against which the doctrine is interposed has actually and necessarily been litigated and determined in the prior action. *Housing Authority v. YMCA* (1984), 101 Ill. 2d 246, 461 N.E.2d 959; *Illinois State Cham-*

*ber of Commerce v. Pollution Control Board* (1979), 78 Ill. 2d 1, 398 N.E.2d 9; *Chaney Building Co. v. City of Tucson* (1986), 148 Ariz. 571, 716 P.2d 28; *Gilbert v. Board of Medical Examiners* (1987), 155 Ariz. 169, 745 P.2d 617.

There is no dispute that plaintiff here was the defendant in the Arizona criminal proceeding, that he was in fact convicted, and that the conviction was a final judgment by a court of competent jurisdiction. The questions remaining for analysis are whether the issues presented in the instant case were identical to those in the Arizona proceeding, and if so, whether the instant issues were actually and necessarily decided in the Arizona proceeding. We find that, under Arizona law, both of these questions must be answered in the affirmative.

Section 13—807 of the Arizona revised statutes provides:

> "A defendant convicted in a criminal proceeding is precluded from subsequently denying in any civil proceeding the essential allegations of the criminal offense of which he was adjudged guilty, including judgments of guilt resulting from no contest pleas. An order of restitution in favor of a person does not preclude that person from bringing a separate civil action and proving in that action damages in excess of the amount of the restitution order." Ariz. Rev. Stat. Ann. §13—807 (West 1989).

In *Allstate Insurance Co. v. Willis* (1990), 57 Ariz. Adv. Rep. 55, relied upon by Upjohn,[1] the Arizona court of appeals determined that the above section extends with equal force to convictions resulting from an *"Alford* plea." Therefore, because plaintiff in the instant case entered such a plea, he would be estopped under this principle from denying in any subsequent civil proceeding any of the acts which formed the basis of his criminal convictions. This includes a denial of his state of mind when committing the offense, as the following discussion illustrates.

---

[1]We note that this is an unpublished, memorandum decision. Although under the Arizona rules of appellate procedure such decisions normally are not regarded as precedent and may not be cited in any court, a specific exception exists when they are cited "for the purpose of establishing the defense of res judicata, collateral estoppel or the law of the case." (Ariz. R. Civ. App. P. 28(c) (17B Ariz. Rev. Stat. Ann. (West 1988)).) In any event, our research has uncovered no other Arizona case on this issue, and we find that the court's interpretation in *Allstate v. Willis* decisively comports with the plain meaning of section 13—807, and with the Court's reasoning in *North Carolina v. Alford.* Accordingly, we adopt the ruling in *Allstate v. Willis* for purposes of our decision here.

Both the Arizona rules of criminal procedure and the determination of the Supreme Court in *North Carolina v. Alford* provide that before an *"Alford* plea" is accepted and a judgment of guilt entered thereon, the trial court must determine that there is a factual basis for the plea. (Ariz. Rules Crim. P. 17.3, 26.2 (17 Ariz. Rev. Stat. Ann. (West 1987)); *North Carolina v. Alford,* 400 U.S. 25, 27 L. Ed. 2d 162, 91 S. Ct. 160; see also *Allstate v. Willis,* 57 Ariz. Adv. Rep. 55.) Necessarily, when the Arizona trial court determined that a factual basis existed for plaintiff's plea in the instant case, it also determined that he possessed the requisite mental state to commit the offenses charged, and that there were no defenses to the charges.

As stated previously, plaintiff was convicted of manslaughter and aggravated assault. Both offenses are felonies under Arizona law and, at least as to aggravated assault, require that the crime be committed intentionally or knowingly. (Ariz. Rev. Stat. Ann. §§13—1103, 13—1203, 13—1204 (West 1989).) Therefore, in accepting plaintiff's plea of guilty to the charge of aggravated assault, the Arizona trial court necessarily found that he acted knowingly and/or intentionally, because such a mental state is an element of the crime. (Ariz. Rev. Stat. Ann. §§13—1203, 13—1204 (West 1989).) Involuntary intoxication, on the other hand, negates the requisite mental state for the crimes of manslaughter and aggravated assault under Arizona law and is a complete defense to both crimes. (*State v. Figueroa* (1986), 151 Ariz. 213, 726 P.2d 629.) Accordingly, in light of the foregoing law and the requisite mental states of the offenses to which plaintiff pled guilty, plaintiff cannot now argue that he was involuntarily intoxicated when he committed the crimes at bar and that he lacked intent to commit those crimes.

Furthermore, as Upjohn argues, valid guilty pleas in Arizona constitute a waiver of all nonjurisdictional defenses to the crime charged. (*State v. Sims* (1978), 118 Ariz. 210, 575 P.2d 1236; *State v. Hostler* (1973), 109 Ariz. 212, 507 P.2d 974.) Thus, when plaintiff entered his guilty plea, he waived any defense of involuntary intoxication.

Accordingly, each element necessary to the application of collateral estoppel has been satisfied in this case. Were the doctrine to be applied, it would bar the plaintiff from maintaining in the instant action that his Arizona crimes were committed through no fault of his own due to an involuntary state of drug-induced intoxication.

Even where each element has been established, however, collateral estoppel will not be applied if an injustice would result. (*S & S Automotive v. Checker Taxi Co.* (1988), 166 Ill. App. 3d 6, 520 N.E.2d 929.) Before applying the doctrine, the court must first determine

that the party against whom the estoppel is asserted had a full and fair opportunity and an incentive to litigate the issue in the prior proceeding. *Housing Authority v. YMCA*, 101 Ill. 2d 246, 461 N.E.2d 959; *Cleveringa v. J.I. Case Co.* (1992), 230 Ill. App. 3d 831, 595 N.E.2d 1193; *Gilbert v. Board of Medical Examiners*, 155 Ariz. at 174, 745 P.2d at 622.

At the hearing on defendants' motion for involuntary dismissal, the evidence established that plaintiff had raised the defenses of lack of intent, lack of specific intent, insanity, intoxication, and diminished capacity during the Arizona criminal proceeding. The affidavit of plaintiff's Arizona criminal attorney in opposition to defendants' motion states that prior to plaintiff's plea of guilty to the reduced charges, both he and plaintiff had reason to believe that Prozac and/or Xanex caused plaintiff's actions. There is no question that plaintiff had a full and fair opportunity in the Arizona criminal proceeding to litigate the issue of whether his actions were the result of an involuntarily induced state of intoxication. Plaintiff voluntarily, intelligently, and knowingly waived the issue and entered his plea of guilty. On the incentive to litigate question, a person faced with the potential of being sentenced to a substantial term in prison has every incentive to interpose a defense that would constitute a complete defense to the crimes he is charged with committing. It would be an anomaly to suggest that, when plaintiff abandoned his defense, he did so out of a lack of incentive as opposed to a desire to substantially reduce his potential prison term.

■ Plaintiff's final argument is that applying the doctrine of collateral estoppel to this case would violate the public policy of Illinois. Plaintiff cites no authority for this proposition, nor can we find any. We believe that the matter is quite succinctly put in the quotation from Professor Geoffrey C. Hazard, Jr., referenced in Upjohn's brief:

> "The clearest case for such an estoppel is where a defendant pleads guilty to a substantial criminal charge and then seeks in civil litigation concerning the same transaction to assert that he did not commit the criminal act. Particularly galling is the situation where a criminal convicted on his own guilty plea seeks as plaintiff in a subsequent civil action to claim redress based on a repudiation of the confession. The effrontery or, as some might say it, *chutzpah*, is too much to take. There certainly should be an estoppel in such a case." Hazard, *Revisiting the Second Restatement of Judgments: Issue Preclusion and Related Problems*, 66 Cornell L. Rev. 564, 578 (1981).

Because plaintiff is collaterally estopped from contending that his incarceration is the result of anything other than his own intentional acts, nothing that he alleges against any of the defendants has a proximate causal relationship to his incarceration.

For the foregoing reasons, we find that the trial court properly dismissed plaintiff's action.

Judgment affirmed.

JOHNSON and CAHILL, JJ., concur.