ERNIE TALARICO, JR., Plaintiff-Appellant, v. FRANK E. DUNLAP *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 1—94—0041

Opinion filed June 12, 1996.

Mark McNabola and Michael W. Rathsack, both of Chicago, for appellant.

John N. Seibel and Jennifer A. Keller, both of Chicago, for appellees.

PRESIDING JUSTICE TULLY delivered the opinion of the court:
Plaintiff, Ernie Talarico, brought this action in the circuit court of Cook County against defendants, Dr. Frank Dunlap and Dixie Ashland Dermatology Associates, Ltd., seeking to recover damages he allegedly sustained from Accutane, a drug prescribed by Dr. Dunlap for plaintiff's acne. Defendants moved for summary judgment on the grounds of collateral estoppel. The trial court granted defendants' motion. It is from this order that plaintiff now appeals pursuant to Supreme Court Rule 301 (155 Ill. 2d R. 301).

For the reasons that follow, we reverse and remand.

## FACTUAL BACKGROUND

The relevant and unique facts are as follows. Talarico was a second-year medical student at the Chicago College of Osteopathic Medicine. Starting in January of 1986, Talarico took part in a medical research project concerning potential adverse effects associated

with the use of Accutane. Later that year, he went to see Dr. Dunlap at Dixie-Ashland Dermatology Associates, Ltd., to obtain treatment for his acne condition. Dr. Dunlap prescribed Accutane for the acne condition, which had some side effects. Talarico first used Accutane on June 6, 1986, and continued using it until September 1986.

Under the medication, Talarico engaged in some bizarre criminal conduct. On August 21, 1986, Talarico went to a forest preserve, grabbed a 15-year-old boy and pushed him to the ground, and shocked him with a stun gun. On August 27, 1986, Talarico stunned a 25-year-old man with a stun gun in the forest preserve. He then grabbed the man's genitals and kissed him several times on the face. Subsequently, Talarico was arrested and charged with aggravated battery, aggravated unlawful restraint, armed violence and aggravated criminal sexual abuse. Talarico considered a defense to the charges based upon the purported intoxicating effects of Accutane, but in the end chose not to assert any such defense. At the criminal hearing, Talarico entered into a plea agreement where he pled guilty to two counts of misdemeanor battery. In return, he was sentenced to one year of misdemeanor probation and underwent psychiatric counseling. The trial court noted that Talarico had no prior criminal background. Also at the hearing, Talarico stipulated to the facts concerning his crimes. He further admitted to having committed the crimes "intentionally and knowingly, without legal justification" and voluntarily entered a guilty plea.

Subsequently, Talarico brought this suit, alleging that Dr. Dunlap should not have prescribed Accutane and failed to properly monitor Talarico's condition. Talarico further claims that Dr. Dunlap's acts and omissions were the proximate cause of his injuries, which included the criminal charges. Defendants moved for summary judgment pursuant to section 2—1005 of the Code of Civil Procedure (735 ILCS 5/2—1005 (West 1994)), which the trial court granted, on the basis that his guilty plea in the criminal case collaterally estopped him from now claiming that Accutane caused his criminal behavior. Prior to this action being brought, the Governor of the State of Illinois pardoned Talarico. The governor pronounced:

> "Ernie Talarico, Jr., is hereby acquitted and discharged of and from all further imprisonment and restored to all the rights of citizenship which may have been forfeited by the conviction."

Talarico now appeals the trial court's granting of defendants' summary judgment motion.

## ISSUE PRESENTED FOR REVIEW

On appeal, plaintiff argues that he is not collaterally estopped by

virtue of his guilty plea from claiming that Accutane contributed to cause the criminal conduct.

## OPINION

■ We begin our analysis by reviewing whether summary judgment was properly granted to defendants. Initially, we note that as the relevant facts are undisputed, the issue of whether plaintiff is collaterally estopped from bringing a subsequent civil action if equitable issues are present is purely a question of law and, thus, subject to *de novo* review by this court. *City Suburban Electric Motors, Inc. v. Wagner*, 278 Ill. App. 3d 564, 663 N.E.2d 77 (1996).

Plaintiff contends that he can maintain his cause of action for medical negligence in spite of his plea of guilty to the criminal charges which he alleged were brought on by that negligence. In other words, plaintiff argues that collateral estoppel does not bar him from maintaining this action against the doctor who prescribed Accutane, which contributed to plaintiff's bizarre criminal conduct. Defendants respond that all four elements of the doctrine of collateral estoppel were met and, thus, plaintiff cannot bring a subsequent civil action. We agree that all four elements of the doctrine of collateral estoppel were met, but find that equitable issues were present.

■ The doctrine of collateral estoppel bars the trial of an issue that has been fairly and completely resolved in a prior proceeding. *Progressive Land Developers, Inc. v. Exchange National Bank*, 266 Ill. App. 3d 934, 641 N.E.2d 608 (1994). The doctrine of collateral estoppel requires a defendant to establish (1) that the issue decided in the prior action was identical to the one presented in the suit in question; (2) that a court of competent jurisdiction rendered a final judgment on the merits in the prior action; (3) that the party against whom the doctrine is asserted was a party to the prior action or in privity with such a party; and (4) that the factual issue against which the doctrine is interposed has actually and necessarily been litigated and determined in the prior action. *Bulfin v. Eli Lilly & Co.*, 244 Ill. App. 3d 785, 788, 614 N.E.2d 403 (1993), citing *Housing Authority v. YMCA*, 101 Ill. 2d 246, 461 N.E.2d 959 (1984). However, collateral estoppel will not be applied if an injustice would result. *Bulfin*, 244 Ill. App. 3d at 790. A reviewing court must determine if equitable issues exist. Before the collateral estoppel doctrine can be applied, the court must "first determine [whether] the party against whom the estoppel is asserted had a full and fair opportunity and an incentive to litigate the issue in the prior proceeding." *Bulfin*, 244 Ill. App. 3d at 790-91.

Both parties rely on the *Bulfin* decision to support their argu-

ments. In *Bulfin*, the plaintiff, James Edward Bulfin, fatally shot one person and injured two others in Arizona on October 15, 1988. Bulfin was charged with one count of murder in the first degree and two counts of attempted murder in the first degree. As a result of a plea agreement, Bulfin pled guilty to one count of manslaughter and two counts of aggravated assault. The trial court sentenced Bulfin to 7¹/₂ years' imprisonment on September 22, 1989. *Bulfin*, 244 Ill. App. 3d at 787. Almost a year later, on September 6, 1990, Bulfin sought recovery in the circuit court of Cook County against numerous defendants, including the manufacturers of certain drugs (Prozac and Xanax), the physician who prescribed the drugs and the Illinois health maintenance organization to which the physician belonged. Bulfin argued that it was through the wrongful acts of the defendants that he suffered "involuntary drug-induced intoxication" which caused him to fatally shoot one person and wound two others. The defendants filed a motion to dismiss the cause of action as the plaintiff was collaterally estopped from bringing his subsequent civil action in Illinois since he had pled guilty to the crimes in the Arizona criminal proceedings. *Bulfin*, 244 Ill. App. 3d at 787. The trial court entered an order granting defendants' motion to dismiss, from which Bulfin appealed. *Bulfin*, 244 Ill. App. 3d at 787-88.

Upon review, the appellate court found that the plaintiff satisfied each element necessary to the application of collateral estoppel and, thus, was collaterally estopped from bringing a subsequent civil action. *Bulfin*, 244 Ill. App. 3d at 790. However, the appellate court did not stop there. It further examined whether equitable issues existed, such as was the plaintiff afforded a full and fair opportunity and did the plaintiff have an incentive to litigate his defense during the criminal proceedings. *Bulfin*, 244 Ill. App. 3d at 790-91. The court answered in the affirmative. Accordingly, the plaintiff was collaterally estopped from bringing a subsequent civil action, and his incarceration was the result of his own intentional acts.

■ As in *Bulfin*, we find that all four elements of collateral estoppel are met in the instant case. First, we find that the party against whom the doctrine is asserted was a party to the prior action, as plaintiff, Talarico, in this case was a defendant in a prior criminal proceeding. Second, we conclude that the issue which addresses whether Talarico was responsible for the crimes he committed in the criminal proceeding was identical to the one presented in the instant case. Third, we note that there is no question that Talarico was convicted and sentenced and that this was a final judgment entered by a court of competent jurisdiction.

The parties dispute only in regard to the fourth element, whether

the factual issue against which the doctrine is interposed has actually and necessarily been litigated and determined in the prior action. Plaintiff chose not to assert the "Accutane" defense, on the advice of counsel. He voluntarily and intelligently entered a plea agreement, where he pled guilty and was convicted of two counts of misdemeanor battery. Because battery is a specific intent crime, intoxication, whether voluntary or involuntary, operates as a complete defense, negating the necessary intent (720 ILCS 5/6—3 (West 1994)). Plaintiff could not simultaneously have acted both intentionally and knowingly *and* without intent as a result of intoxication. Thus, we find that the trial court properly convicted plaintiff on the basis of his guilty plea, holding that plaintiff possessed the requisite intent. At this point, all elements of collateral estoppel are met. However, our analysis does not end here.

It is important to address the equitable issues that are present in the instant case. If an injustice would result, collateral estoppel will not be applied. As stated earlier, we must first determine whether plaintiff had a full and fair opportunity *and* an incentive to litigate the issue in the prior proceeding, before applying collateral estoppel.

It is undisputed that plaintiff received a full and fair hearing. The argument here is similar to the one in regard to the fourth element of collateral estoppel doctrine. Plaintiff and his counsel both had reason to believe that Accutane caused or contributed to plaintiff's actions. Plaintiff's counsel had filed an affidavit in opposition to defendants' motion for summary judgment stating that he was aware of an Accutane defense, but was considering a plea bargain even though he believed defendants were liable for plaintiff's behavior. Plaintiff ultimately chose not to assert any such defense on advice of counsel. Instead, plaintiff pled guilty to two counts of misdemeanor battery, and the trial court imposed a sentence of one year's probation with psychiatric counseling. Thus, it is fair to say that plaintiff had a full and fair opportunity in the criminal proceeding to litigate the issue of whether his actions were the result of an involuntarily induced state of intoxication. We note that plaintiff chose to voluntarily and intelligently waive that issue and enter a plea of guilty.

That having been said, we next determine the critical question: whether plaintiff had an incentive to litigate his medical defense. We find that plaintiff had no incentive to litigate his "Accutane" defense. Under these unique facts, plaintiff was faced with the choice of probation or a long-term prison sentence. Plaintiff naturally chose to enter the plea agreement, on advice of counsel, as he would only be convicted of a misdemeanor, and his sentence would include one

year's probation and psychiatric counseling. By entering this plea agreement, plaintiff was able to continue his medical schooling and receive counseling, something he could not accomplish were he incarcerated. If plaintiff had decided to go to trial and attempt to bring the "Accutane" defense, there is a chance that the defense would not have been accepted by the jury, and plaintiff could have been sentenced for up to 30 years for armed violence, a Class X felony since a category II weapon (stun gun) was used (see 720 ILCS 5/33A—1(b) (West 1994); 730 ILCS 5/5—5—3(c)(2)(C) (West 1994)). Unlike *Bulfin*, where the plaintiff did have an incentive to litigate his medical defense since his choice was between entering a plea agreement for manslaughter or going to trial for first degree murder, both of which warrant a prison sentence, here, plaintiff did not have an incentive to interpose a medical defense that would constitute a complete defense to the crimes and risk a substantial term in prison if it did not work. Rather, plaintiff had an incentive to plea bargain, to continue his medical education, and to avoid a felony conviction. We find that, as a matter of law, the trial court erred in granting summary judgment in favor of defendants, and thus, reverse.

We note that the Governor of the State of Illinois gave a general pardon to plaintiff. However, we do not take this pardon into consideration, as it does not erase his conviction. During oral arguments, both parties conceded that it does not affect the outcome of this case.

In light of the foregoing, we reverse the trial court's judgment, which granted summary judgment in favor of defendants, and remand for further proceedings not inconsistent with the views contained herein.

Reversed and remanded.

GREIMAN and CERDA, JJ., concur.