SECOND DIVISION

May 25, 1999

No. 1-98-2331

PEREGRINE FINANCIAL GROUP, INC., )

an Iowa Corporation Authorized to )

do Business in Illinois, )

) Appeal from the Circuit

Plaintiff-Appellee, ) Court of Cook County.

)

v. )

)

PEDRO MARTINEZ and MARIANA )

MARTINEZ, )

)

Defendants-Appellants, )

) Honorable Sheldon Gardner

and ) and Honorable John W.

) Gustafson, Judges

ROBERT GRUNTZ, ) Presiding.

)

Defendant. )

PRESIDING JUSTICE GORDON DELIVERED THE OPINION OF THE COURT:

Peregrine Financial Group, Inc. (Peregrine), a commodity brokerage business, filed the instant action against Pedro Martinez, Mariana Martinez, and Robert Gruntz.  Count I, against the Martinezes, alleged breach of a customer account agreement and sought recovery of a margin deficit relative to the Martinezes' customer account.  Count II, against the Martinezes and Gruntz, the Martinezes' agent, alleged fraud.  Pursuant to the Martinezes' motion, Peregrine's action against them was stayed pending arbitration of the Martinezes' claims against Peregrine.  After the Martinezes obtained an arbitration award in their favor, in the amount of $1,020, Peregrine returned to the circuit court to obtain relief on its complaint.  Thereafter, the trial court granted partial summary judgment to Peregrine on the issue of liability on count I and later assessed damages on that count in the amount of $108,430.09, which included as an offset the $1,020 credit awarded to the Martinezes in arbitration.  After entry of that judgment, Peregrine voluntarily dismissed count II of its complaint.  The Martinezes appeal.

On appeal the Martinezes argue that the trial court erred in granting summary judgment to Peregrine on its breach of contract claim.  They argue that the arbitrators decided that claim against Peregrine and that the arbitrators' decision was conclusive because it was not attacked by Peregrine in a petition to vacate (see 710 ILCS 5/12 (West 1996)).  Since we find that the arbitration award did not conclusively determine Peregrine's breach of contract claim or any issues relative to that claim, we affirm the judgment entered in Peregrine's favor.

BACKGROUND FACTS

On or about October 21, 1995, the Martinezes entered into a "Customer Account Agreement" with Peregrine whereby the Martinezes engaged Peregrine to act as their agent for the purchase and sale of commodity futures on various exchanges.  The Martinezes simultaneously entered into an "Arbitration Agreement" with Peregrine whereby the Martinezes agreed to submit all future disputes with Peregrine to arbitration.  Pursuant to the customer account agreement, Peregrine retained the right to choose arbitration or circuit court adjudication of any claims it could assert against the Martinezes.

Among other things, the customer account agreement required the Martinezes to maintain sufficient funds in their commodity futures trading account to satisfy Peregrine's margin requirements.  If the Martinezes failed to maintain a sufficient margin, Peregrine had the right, at its discretion, to liquidate the Martinezes' account.  In the event of liquidation, the Martinezes would be liable for any deficiency as well as interest and Peregrine's costs of collection including attorney fees.

Peregrine filed its action against the Martinezes on February 23, 1996.  In count I, the breach of contract count, which is the subject of the instant appeal, Peregrine alleged that the Martinezes' customer account incurred a margin deficit on February 5, 1996; that Peregrine issued a demand for additional margin; that the Martinezes failed to comply with that demand; and that Peregrine liquidated their account on February 23, 1996.  Peregrine sought recovery of the margin deficit totalling $54,318.54 plus interest and costs including attorney fees.

On or about July 1, 1996, the Martinezes and Gruntz filed a demand for arbitration and complaint against Peregrine with the National Futures Association (NFA).  On July 12, 1996, they filed a motion in the circuit court to stay Peregrine's breach of contract and fraud action pending arbitration.  They withdrew that motion on August 15, 1996 because Robert Gruntz, the Martinezes' agent for entering orders for the purchase and sale of commodities futures and options, pursuant to a "Limited Power-

of-Attorney" agreement, was not subject to arbitration before the NFA.  The motion for stay was renewed on October 11, 1996.  Peregrine filed a response in opposition to that motion.  On October 24, 1996, the trial court granted the motion for stay but only as to the Martinezes.

The Martinezes' arbitration complaint sought damages in the amount of $39,000 (actual damages of $13,000 trebled) against Peregrine and Tim Mouton, Martin Batiola, and the Chicago Trading Group.
(footnote: 1)  They sought recovery on the basis of breach of fiduciary duty, breach of contract and material misrepresentation.  In support of their claims, they alleged that "the clearing firm" guaranteed direct floor access, flexible margin policies, "a margin department that worked with each individual customer," and a clearing rate of $11.50 per contract.  They further alleged that the defendants constantly and arbitrarily changed their margin policies, that the defendants made numerous unauthorized money transfers between accounts and that the Martinezes had sufficient monies to meet any margin calls.

On July 22, 1996, in a responsive letter to the NFA's request for clarification of claims, the Martinezes stated that they would not have opened their account with the respondents but for the respondents' representations that they would have a reasonable period of time to respond to margin calls and that respondents had "an experienced and well staffed [
sic
] margin department that would work with each individual customer."   The letter further stated that "the Respondents breached their fiduciary duties by misrepresenting and changing the margin policies, making false and misleading statements regarding their firm, and fraudulently inducing Claimants to open accounts."

The Martinezes' arbitration claim proceeded to hearing before the NFA in California.  On February 24, 1997, an arbitration award in the amount of $1,020 was entered in favor of the Martinezes and against Peregrine, the Chicago Trading Group, Mouton and Badiola,
(footnote: 2) jointly and severally.  The text of the award provided as follows:

"The following issues were presented to and decided by the undersigned Arbitrators:  whether Claimants' account was properly liquidated; whether Claimants failed to meet margin calls; whether Respondents breached the customer agreement; whether Respondents made material misrepresentations to Claimants; whether Respondents breached their fiduciary duty to Claimants; whether Respondents made unauthorized money transfers between Claimants' commodity account and their securities account; whether Respondent Mouton informed Claimants' agent, Robert Gruntz, to ignore margin notices; whether Respondents guaranteed direct access to the floor, and if so, did they fail to provide such; whether Respondents guaranteed 'flexible' margin policies, and if so, did they fail to provide such; whether Respondents guaranteed a margin department that 'worked with' each individual customer, and if so, did they fail to provide such; whether Respondents guaranteed a clearing rate of $11.50 per contract; whether Respondents changed their margin policies during the time period the Claimants' account was opened; whether the Claimants' account was frozen; and whether Claimants' account was restricted.

We, being the majority of the Arbitrators selected to hear and determine this matter in accordance with the Code of Arbitration ('Code') of the National Futures Association, hereby determine that the following relief shall be granted:

RESPONDENTS, JOINTLY & SEVERALLY
 shall pay to 
CLAIMANTS

Compensatory Damages 
   $1,020.00   

Punitive Damages 
       -0-     

Treble Damages 
       -0-     

Interest 
       -0-     

Attorneys' Fees 
       -0-     

Other Costs 
       -0-     

Total Amount of Award 
   $1,020.00   
"

On March 7, 1997, the arbitration respondents, including Peregrine, filed a motion to modify the award.  They sought modification to reflect that the $1,020 compensatory damage award was a "commission adjustment" that "should be an offset against Claimants' deficit, rather than remaining a penalty that Respondents must pay to Claimants, directly."  The motion also sought the recovery of respondents' attorney fees in the amount of $28,542.04 because "[t]he Award reflects the fact that Claimants could not prevail on any allegation of the Complaint."  The NFA case administrator refused to forward respondents' motion to the arbitration panel.  She wrote to respondents' attorney on March 13, 1997 in pertinent part as follows:

"You are asking the arbitrators to offset the amount awarded to the Claimants against the debit balance owed to your clients.  However, the debit balance was not an issue before the arbitrators.  Since the Award has already been rendered, it is too late to raise this issue now.

 Furthermore, a review of the record of hearing indicates that you requested attorneys' fees pursuant to the customer agreement or if the panel found that a frivolous case had been filed.  It is clear from the Award, however, that the Claimants prevailed in this case.  Therefore, your request is moot.  Moreover, there is no provision of the Code that allows a party to request to re-open the record in order to submit additional information once an Award has been issued.  See Sections 9(g) and 10(c) of NFA's Code of Arbitration."

The letter concluded by stating, "The Award that was served on February 28, 1997 is final and binding."

The arbitration respondents then filed a successful motion in the circuit court seeking an order that the motion to modify the arbitration award be submitted to the arbitration panel.  On April 7, 1997, the Martinezes filed with the arbitrators a response to Peregrine's motion to modify.  In that response, the Martinezes stated in pertinent part:

 "Respondents have brought the debit issue to the panel, an issue they attempted to avoid at hearing.  However, this panel heard all the factual elements of this matter including how the alleged debit came about and are now being asked by the Respondents to qualify their debit claim, to confirm that such a debit is valid, because in asking for an offset, Respondents are asking for a validation of their claim.  This panel in rejecting the offset request, would at the same time be ruling that the debit claimed by Respondents as to Claimants is not valid and should not stand.  Claimants request that this panel make just such a ruling.  The Claimants request that their panel based on the evidence, testimony and arguments presented at hearing enter an order stating that there is to be no offset and that the debit claim of Respondents is not valid, and no amount is owed by Claimants to Respondents based on the debit claim."

With respect to the respondents' claim for attorney fees, the Martinezes responded that the request for attorney fees had been made at the arbitration hearing and rejected and that there was no basis for reconsideration of that rejection.

The arbitration respondents, including Peregrine, then filed a reply in which they alleged that modification was required pursuant to section 10(c) of the NFA Code of Arbitration because the award contained a material mistake, the arbitrators awarded on a matter not submitted to them, and the award was imperfect in form not affecting the merits.  Specifically, they argued that the only claim before the arbitrators was the Martinezes' claim for compensatory damages of $13,000 upon which they sought trebling.  They further argued that the $1,020 award could be assumed to "represent[] a commission adjustment of $30.00 for 34 trades."  They then informed the arbitrators of Peregrine's pending circuit court lawsuit against the Martinezes and the Martinezes' argument before that tribunal that the arbitration award resolved all issues between the parties including the issues surrounding the debit balance in the Martinezes' customer account.  The respondents concluded by requesting modification of the arbitration award to "characterize the $1,020.00 for what it is and make the award clear that Claimants did not prevail on all issues before the Arbitrators."  By order dated April 22, 1997, the arbitration panel denied in its entirety, without comment, respondents' motion to modify the award.

While the matter of modification of the arbitration award was pending before the NFA, Peregrine filed a motion for partial summary judgment in the circuit court.  That motion, filed on March 10, 1997, was supported by facts set forth in a request to admit left unanswered by the Martinezes; an affidavit from Peregrine's vice president and general counsel verifying certain factual matter set forth in Peregrine's motion; and an affidavit from Peregrine's counsel in the state court action and arbitration proceedings verifying the arbitration documents attached as exhibits to the motion.  In that motion, and with respect to count I of its complaint against the Martinezes, Peregrine recited facts establishing the existence of a customer account agreement between the Martinezes and Peregrine, the Martinezes' failure to maintain sufficient funds in their margin account, Peregrine's demand upon the Martinezes and Gruntz for additional margin, Peregrine's liquidation of the Martinezes' account pursuant to the customer account agreement, and Peregrine's deficit after liquidation.  Peregrine contended that its submissions proved the existence of a contract, consideration, performance, breach, and damages proximately caused by the breach.  It also contended that there were no material facts in dispute with respect to the Martinezes' liability.

In response, the Martinezes argued that the arbitration award rendered in their favor prevented Peregrine from obtaining partial summary judgment on count I.  They argued that they alleged in the arbitration proceedings that Peregrine had breached its fiduciary duties and its customer account agreement, the same agreement relied upon by Peregrine in its state court action.  They argued that Peregrine did not prevail before the arbitration panel on those issues because the panel denied Peregrine's request for attorney fees, an expense to which Peregrine would have been entitled under the terms of the customer account agreement had it prevailed.  Attached to the Martinezes' response was their arbitration complaint; the February 24, 1997 arbitration award; Peregrine's motion to modify the award; and the NFA's response to that motion.

Thereafter, Peregrine filed its motion for ruling on its motion for partial summary judgment and a memorandum in support of that motion in which it responded to the Martinezes' claim that the arbitrator ruled on the claims Peregrine was asserting in the state court.  The Martinezes filed a response to the memorandum, and Peregrine filed a reply.  On July 7, 1997 the trial court granted partial summary judgment to Peregrine on the liability issue on count I, its breach of contract claim.  On February 4, 1998, after hearing evidence on the issue of damages, the trial court entered judgment in favor of Peregrine in the amount of $108,430.09.  On March 26, 1998, the court entered an order granting Peregrine's motion to strike and dismiss defendants' affirmative defenses and counterclaims.  It also granted Peregrine's motion to voluntarily dismiss count II, Peregrine's fraud count against the Martinezes and Gruntz.  The Martinezes' motion to reconsider was denied on June 3, 1998.

DISCUSSION

The Martinezes argue on appeal that the trial court erred in granting summary judgment to Peregrine on its breach of contract claim because the arbitrators decided that claim against Peregrine.  They argue that the arbitrators' decision was conclusive and that Peregrine was collaterally estopped from relitigating that issue in the trial court.

Generally, arbitration awards have the same 
res
 
judicata
 and collateral estoppel effect as court judgments.  
Taylor v. Peoples Gas Light & Coke Co.
, 275 Ill. App. 3d 655, 656 N.E.2d 134 (1995).  See 
Rosee v. Board of Trade
, 43 Ill. App. 3d 203, 239, 356 N.E.2d 1012, 1036 (1976), quoting 
White Eagle Laundry Co. v. Slawek
, 296 Ill. 240, 244, 129 N.E. 753, 755 (1921) (stating arbitration award is final and binding, "'having all the force of an adjudication and effectually concluding [
sic
] 
the parties from again litigating the same subject'" in a common law action).  (Error original.)  See generally Restatement (Second) of Judgments §84 (1982).  Under the doctrine of 
res
 
judicata
 or estoppel by judgment, a final judgment may be asserted in bar of a second action where the parties and causes of action are identical.  The former judgment bars not only questions actually decided but those which might properly have been litigated.  
Horwitz, Schakner & Associates v. Schakner
, 252 Ill. App. 3d 879, 625 N.E.2d 670 (1993); 
Monmouth Public Schools, District No. 38 v. Pullen
, 141 Ill. App. 3d 60, 489 N.E.2d 1100 (1985).  Under the doctrine of collateral estoppel or estoppel by verdict, only those issues actually decided in the prior suit are barred from relitigation.  
Talarico v. Dunlap
, 281 Ill. App. 3d 662, 667 N.E.2d 570 (1996), 
aff'd
, 177 Ill. 2d 185, 685 N.E.2d 325 (1997); 
Taylor
, 275 Ill. App. 3d 655, 656 N.E.2d 134; 
Pullen
, 141 Ill. App. 3d 60, 489 N.E.2d 1100.

In 
River Park, Inc. v. City of Highland Park
, 184 Ill. 2d 290, 703 N.E.2d 883 (1998), our supreme court adopted the "transactional" test as the exclusive test for determining whether causes of action are the same for purposes of 
res
 
judicata
.  Under that approach, "a claim is viewed in 'factual terms' and considered 'coterminous with the transaction, regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff; *** and regardless of the variations in the evidence needed to support the theories or rights.'"  
River Park
, 184 Ill. 2d at 309, 703 N.E.2d at 892, quoting Restatement (Second) of Judgments §24, Comment a, at 197 (1982).  The doctrine of 
res
 
judicata
 prevents a plaintiff from splitting theories of recovery that relate to one transaction.  See Restatement (Second) of Judgments §24(1), at 196 (1982) ("the claim extinguished includes 
all
 
rights
 
of
 
the
 
plaintiff
 
to
 
remedies
 
against
 
the
 
defendant
 with respect to all or any part of the transaction").  (Emphasis added.)  Similarly, the doctrine would prevent the defendant from asserting claims against the plaintiff in a subsequent action if the defendant asserted counterclaims against the plaintiff in the original action and if those counterclaims arose out of the same transaction as the subsequently asserted claims.  See Restatement (Second) of Judgments §23, at 194 (1982) ("[w]here the defendant interposes a claim as a counterclaim and a valid and final judgment is rendered against him on the counterclaim, the rules of bar are applicable to the judgment"); §23, Comment a, at 194 ("[a] defendant who interposes a counterclaim is, in substance, a plaintiff, as far as the counterclaim is concerned").  If, however, the defendant did not interpose counterclaims in the earlier action, and was not required to do so, there is no bar from raising them in a subsequent action.  See 
Donoghue v. Kohlmeyer & Co.
, 63 Ill. App. 3d 979, 983-84, 380 N.E.2d 1003, 1007 (1978) (finding plaintiff was not barred from bringing action in circuit court alleging he was wrongly induced to sign partnership agreement where that claim was not filed as a counterclaim in an earlier arbitration proceeding brought by partnership to determine whether plaintiff was a limited partner pursuant to the terms of the partnership agreement).

In the instant case, the cause of action asserted in the arbitration proceeding was not the same cause of action asserted in the circuit court action.  While both actions involved the same transaction, the customer account agreement, the causes of action were different.  The arbitration proceeding adjudicated the rights and claims of the Martinezes, namely, breach of contract, breach of fiduciary duties, and negligent misrepresentation by Peregrine, while the circuit court action adjudicated Peregrine's rights and claims, namely, breach of contract and fraud.  Peregrine did not file a counterpetition in arbitration to interpose its claims against the Martinezes, nor was it required to do so.  We note that there are no compulsory counterclaims in Illinois.  
Woolsey v. Wilton
, 298 Ill. App. 3d 582, 699 N.E.2d 176 (1998);  
Wilson v. M.G. Gulo & Associates
, 294 Ill. App. 3d 897, 691 N.E.2d 875 (1998)
.  See 735 ILCS 5/2-

608(a) (West 1996) (a defendant "
may
" plead any claim against one or more plaintiffs).  (Emphasis added.)  More importantly, Peregrine was not required to submit its counterclaims to arbitration because the arbitration agreement did not require it to do so (
Flood v. Country Mutual Insurance Co.
, 41 Ill. 2d 91, 242 N.E.2d 149 (1968) (arbitration agreement controls issues subject to arbitration); 
Vasilakis v. Safeway Insurance Co.
, 46 Ill. App. 3d 369, 361 N.E.2d 1 (1977) (same)).  
See 
Donoghue
, 63 Ill. App. 3d at 983-84, 380 N.E.2d at 1007.  As discussed above, the arbitration agreement between Peregrine and the Martinezes required the Martinezes to submit their claims to arbitration but imposed no such obligation upon Peregrine.

Although the causes of action presented by the Martinezes and Peregrine in the two proceedings are different for purposes of 
res
 
judicata
, each action could nevertheless raise common issues of fact regarding the validity of the contract, its terms, and whether it had been modified.  In accordance with collateral estoppel principles, any such issues actually determined could not be relitigated in the subsequent but different cause of action.  See 
Donoghue
, 63 Ill. App. 3d at 984, 380 N.E.2d at 1007 (finding plaintiff could be entitled to monetary damages based upon wrongful inducement to contract but was barred from seeking rescission of partnership agreement, the terms of which were enforced in the earlier arbitration proceeding).  See generally Restatement (Second) of Judgments, Title D, Introductory Note, at 196 (1982), stating:

"[W]hen a second action is brought upon a claim different from that which underlay the first action, the results of the first action may still affect the second:  issues litigated and determined between the parties in the first action are conclusive upon them in the second action under the rules as to collateral estoppel."

The requirements for the application of collateral estoppel are:  (1) the issue decided in the prior adjudication is identical to that presented in the instant suit; (2) the party against whom estoppel is asserted was a party or in privity with a party to the prior litigation; (3) the prior adjudication resulted in a final judgment on the merits; and (4) the factual issue against which the doctrine is interposed has actually and necessarily been litigated and determined in the prior adjudication.  
E.g.
, 
Talarico
, 281 Ill. App. 3d at 665, 667 N.E.2d at 572; 
Taylor
, 275 Ill. App. 3d at 660, 656 N.E.2d at 139.  See generally Restatement (Second) of Judgments §27 (1982).  The party asserting the doctrine of collateral estoppel bears the "heavy burden" of demonstrating with clarity and certainty what the prior judgment determined.  
People v. Zegiel
, 179 Ill. App. 3d 649, 651, 534 N.E.2d 664, 665 (1989); accord 
Betts v. Manville Personal Injury Settlement Trust
, 225 Ill. App. 3d 882, 926, 588 N.E.2d 1193, 1221 (1992); 
People v. Winston
, 200 Ill. App. 3d 296, 558 N.E.2d 773 (1990).  See generally Restatement (Second) of Judgments §27, Comment f, at 257 (1982).  As stated in 
Betts
, 225 Ill. App. 3d at 926, 588 N.E.2d at 1221, citing 
Hammond v. North American Asbestos Corp.
, 207 Ill. App. 3d 556, 562, 565 N.E.2d 1343, 1347 (1991):

"[F]or collateral estoppel to apply, it must conclusively appear that the fact must have been so in issue that it was necessarily decided by the court rendering the prior judgment.  If there is any uncertainty because more than one distinct issue of fact is presented to the court, the estoppel will not be applied."

Accord 
Case Prestressing Corp. v. Chicago College of Osteopathic Medicine
, 118 Ill. App. 3d 782, 785, 455 N.E.2d 811, 815 (1983) (estoppel will not operate unless there is a "finding of a specific, material and controlling fact in the former case and it must conclusively appear that the issue of fact was so in issue that it was necessarily determined by the court rendering the judgment").  The reviewing court has a duty to study the record to determine whether the trier of fact in the prior adjudication could have based its decision, verdict or judgment upon a matter other than that which the party asserting collateral estoppel attempts to preclude from consideration in the subsequent action.  
Zegiel
, 179 Ill. App. 3d at 651, 534 N.E.2d at 665.

In the instant case, in order to obtain judgment in its favor on its breach of contract action, Peregrine would have to prove that its contract with the Martinezes required them to meet margin calls and that the Martinezes failed to do so.  The Martinezes contend that those issues were conclusively decided in their favor by the arbitrators and that Peregrine was precluded from relitigating those issues in its circuit court action.  We disagree.  We find that the Martinezes did not sustain their burden of showing that the arbitrators actually or necessarily decided those issues.

In reaching this conclusion we are mindful of language in the arbitration award stating that the arbitrators were "presented [with] and decided" such issues as "whether the [Martinezes'] account was properly liquidated," "whether the [Martinezes] failed to meet margin calls," and "whether [Peregrine] changed [its] margin policies during the time period the [Martinezes'] account was opened."  However, that assertion by the arbitrators is not born out by the award.  While the arbitrators stated that they had "decided" those issues, they did not specifically indicate in whose favor they made their "decisions" nor did they offer any articulated rationale delineating their "decisions."  Similarly, no findings relative to those issues can be deduced from the $1,020 award made to the Martinezes.  Neither the calculation nor the underlying basis for that award are ascertainable from the face of the award.

Nor is the basis for the award ascertainable from the record before this court, since the Martinezes did not submit to the trial court transcripts of the arbitration hearing or excerpts of those transcripts.  See 
Betts
, 225 Ill. App. 3d at 926, 588 N.E.2d at 1221 (party asserting collateral estoppel bears burden of demonstrating what prior judgment determined); see also 
Foutch v. O'Bryant
, 99 Ill. 2d 389, 459 N.E.2d 958 (1984); 
Moniuszko v. Moniuszko
, 238 Ill. App. 3d 523, 525 n.1, 606 N.E.2d 468, 470 n.1 (1992) (any doubts which may arise from the incompleteness of the record will be reflected against the appellant).  Here, for example, the record contains no evidence itemizing the monetary losses that the Martinezes claimed to have suffered as a result of the liquidating trades.  Their filings in arbitration, which were made a part of the record, show only that they sought $13,000, trebled, for "actual losses, wrongful liquidation, and lost profits."  Absent such evidence, it is impossible to correlate the $1,020 award with the losses allegedly suffered by the Martinezes as a result of Peregrine's liquidation of their account.

The inference to be drawn from the amount of the award to the Martinezes, which is significantly less than what the Martinezes sought, is at best ambiguous and inconclusive.  In the summary judgment proceedings in the circuit court, Peregrine suggested that the $1,020 award corresponded to the commission fees charged by Peregrine for the liquidation trades.  In his affidavit attached to Peregrine's partial summary judgment motion, Bradley Rosen, Peregrine's vice president and general counsel, averred that the $1,020 figure totalled Peregrine's commissions of $30 on each of the 34 "round-turn trades" that occurred during the liquidation of the Martinezes' account on February 23, 1996 after they failed "to cover margins."  He also averred that the $1,020 commission amount was included in the liquidation loss Peregrine sought to recover in its common law action.  Assuming the accuracy of these statements, which were not contradicted by the Martinezes, an award returning the commissions on the liquidation trades could be viewed as vitiating the entire liquidation.  Countervailing that view, however, is the fact that the arbitrators did not award the Martinezes most, if any, of the $13,000 loss they claimed as "actual losses, wrongful liquidation, and lost profits."  The $1,020 award also could support a conclusion that the arbitrators decided the issue of liquidation in Peregrine's favor.  The rejection of Peregrine's commission fees without a corresponding award for lost profits, could suggest, as Peregrine asserted in its "Memorandum in Support of Motion for Ruling on Motion for Partial Summary Judgment," that,

"What seems clear to [Peregrine] to have happened, is that the arbitrators thought that it was not fair to charge the Martinez [
sic
] commissions for the liquidating trades."

The inconclusive nature of the $1,020 arbitration award is further exacerbated by statements made after its issuance.  As discussed above, Peregrine sought modification of the award to show the $1,020 was a commission adjustment and offset against the Martinezes' deficit.  The NFA case administrator did not forward that request to the arbitrators and instead responded, "the debit balance was not an issue before the arbitrators."  After Peregrine obtained a court order, ordering the arbitrators to review Peregrine's application for modification, the Martinezes responded to that application stating, "[r]espondents have brought the debit issue to the panel, an issue they attempted to avoid at hearing."  The Martinezes further contended, however, that the panel heard evidence regarding the debit balance and requested that the panel make a ruling "that there is to be no offset and that the debit claim of [Peregrine] is not valid, and no amount is owed by [the Martinezes] to [Peregrine] based on the debit claim."  This request shows that even the Martinezes did not believe that the arbitrators actually ruled on Peregrine's breach of contract claim and its right to liquidate the Martinezes' customer account.  The arbitrators' refusal to modify or clarify their award left in doubt any definitive conclusion as to whether they had decided factual issues that bore directly on Peregrine's right to liquidate and to recover on its breach of contract claim.  Given this uncertainty, collateral estoppel cannot be applied (see 
Betts
, 225 Ill. App. 3d at 928, 588 N.E.2d at 1222-23 (general verdict of negligence in prior action where two theories had been advanced will not bar subsequent action on one of those theories since uncertainty exists as to which of two theories conclusively decided in first case)
; 
Case Prestressing Corp.
, 118 Ill. App. 3d at 785, 455 N.E.2d at 815); and the trial court correctly refused to estop Peregrine from asserting its breach of contract claim against the Martinezes.

Since the Martinezes have not attacked the judgment in Peregrine's favor on any other basis, that judgment is affirmed.

Affirmed.

McNULTY and COUSINS, JJ., concur.

FOOTNOTES
1:
As alleged in later pleadings, Timothy Mouton was president of the Chicago Trading Group.  Chicago Trading Group had an agreement with Peregrine whereby Chicago Trading Group would "introduce commodity futures and options accounts to Peregrine."  Mouton allegedly solicited the Martinezes, through Gruntz, to open a commodity account at Peregrine.

2:
Although the Martinezes' arbitration claim named respondent "Martin Batiola," the arbitration award entered judgment against "Joseph Marty Badiola."