ACME-WILEY HOLDINGS, INC., *et al.*, Plaintiffs-Appellants, v. SIEG BUCK, Defendant-Appellee.

First District (3rd Division)   No. 1—03—1099

Opinion filed September 24, 2003.

Daniel T. Graham, of Funhouser, Vegosen, Liebman & Dunn, Ltd., of Chicago, and Kenneth J. Turnbull and Kathleen L. McAchran, both of O'Melveny & Myers, L.L.P., of New York, New York, for appellants.

Barry A. White, Jeffrey W. Sarles, Michael Forde, and Christopher C. Murray, all of Mayer, Brown, Rowe & Maw, of Chicago, for appellee.

JUSTICE SOUTH delivered the opinion of the court:

This interlocutory appeal arises from an order of the circuit court of Cook County denying plaintiffs Acme-Wiley, Icon and Stonebridge's motion to stay arbitration of claims asserted by defendant Sieg Buck.

The pertinent facts are as follows. Sieg Buck was hired by Icon as its chief executive officer in November of 2000. Buck and plaintiffs entered into an employment agreement which set out such matters as defendant's base salary, annual bonuses, employee benefits, equity participation, etc. It further provided:

"SEVERANCE—In the event we terminate your employment for any reason other than Cause, the Company will continue, for a twelve month period, your base salary, medical benefits and insurance, and provide reasonable outplacement services of your choice. Cause shall be defined for the purposes of this agreement as gross negligence, willful misconduct, fraud, or commission of a felony. It shall also include failure to apply your full business time and best efforts to the requirements of the Company, failure to routinely and openly communicate and collaborate with Stonebridge's Operating partners on Company matters, and failure to implement the directives of Stonebridge's Operating partners regarding the Company in a timely manner. Termination for Cause, other than for matters involving commission of a felony or fraud, will be preceded by written notification to you of Stonebridge's concerns and a single, 30-day opportunity for you to permanently cure the issues of concern, after which no other opportunities for cure will be contractually required or provided.

DISPUTE RESOLUTION—Any dispute related to your employment, performance or compensation shall be resolved exclusively through arbitration, held in Chicago, Il. by and in accordance with the rules of the American Arbitration Association. Decisions of the arbitrator shall be in accordance with applicable state law and not based upon the principle of *ex-aequo et bono*. The arbitrator shall state the reason for any award and shall not have the power to amend or modify this agreement. The unsuccessful party shall pay all costs of arbitration, including costs of the other party."

In October of 2002, Icon terminated Buck for cause as defined in the employment agreement. At that time, Icon offered Buck an op-

portunity to resign and tendered to him a separation agreement, which offered severance compensation for Buck and provided:

> "**Releases**: You agree to release Stonebridge Partners and its portfolio companies as well as the Company and any of its affiliates, including all investors, lenders, advisors, partners, and employees, from any and all claims related to or arising from our association and your employment. Likewise, Stonebridge Partners and its portfolio companies as well as the Company and any of its affiliates, all as previously defined, agree to release you from any and all such claims, unless related to illegal or fraudulent actions uncovered during the term of this agreement."

Unlike the employment agreement, the separation agreement does not contain an arbitration clause with respect to dispute resolutions.

Defendant signed the separation agreement on October 24, 2002, and was compensated by plaintiffs as per the terms of that agreement.

On November 19, 2002, defendant sent a letter to plaintiffs demanding additional lump-sum payments based upon the salary continuation obligations contained in the employment agreement and declared that the separation agreement was unenforceable due to a lack of consideration and null and void because it was unconscionable and signed under duress.

Plaintiffs responded by letter urging defendant to retract his repudiation of the separation agreement and to honor it since he had agreed to its terms and signed it. They also advised him that if they did not receive adequate assurances that he was going to honor the separation agreement, they would seek a declaratory judgment in the circuit court.

Thereafter, defendant commenced arbitration proceedings before the American Arbitration Association (AAA) in Chicago, Illinois, in accordance with the terms of the original employment agreement. The arbitration complaint alleged that Buck had been improperly terminated and libeled by plaintiffs in that Icon falsely stated that he inflated revenues in order to enhance his bonus. Plaintiffs then filed a verified complaint in chancery court for declaratory relief and injunctive relief, seeking to stay and permanently enjoin the arbitration proceedings on the grounds that no agreement to arbitrate existed in the separation agreement. Plaintiffs also sought a declaration that the arbitration clause in the employment agreement did not apply to any disputes regarding the separation agreement, which was a valid and enforceable contract. In addition, plaintiffs argued that by executing and receiving the benefits of the separation agreement, defendant had released any and all claims for severance payments pursuant to the terms of the employment agreement. Plaintiffs argued that the valid-

ity of the release contained within the separation agreement was a question of law to be decided by the court, not an arbitrator, and that defendant's libel claim was outside the scope of the arbitration clause contained within the employment agreement.

The court denied plaintiffs' motion to stay arbitration as to Icon and Stonebridge and found that the severance provision contained within the employment agreement required compensation only in the event Icon terminated defendant, but that according to the terms of the settlement agreement, defendant had not been terminated but had resigned instead, and that the question of whether there had been a resignation or a termination was a "dispute related to *** employment" to be determined by an arbitrator. The court further held that defendant's libel claim was a dispute related to his employment, performance and compensation, which fell within the broad scope of the arbitration provision contained within the employment agreement. The court stayed the arbitration as to Acme-Wiley on the grounds that it was not a signatory to the employment agreement. On the other hand, the court denied the stay as to Stonebridge on the grounds that it was not clear whether it had been a signatory to the employment agreement.

Two issues have been raised for our consideration: (1) whether the circuit court erred in allowing defendant to pursue his claim in arbitration without first overcoming the validity of the release agreement in court; and (2) whether it was error to require Stonebridge to arbitrate with Buck even though Stonebridge was not a signatory to the employment agreement.

In rendering its decision, the court relied on a federal labor law case, *Niro v. Fearn International, Inc.*, 827 F.2d 173 (7th Cir. 1987). In that case, plaintiff worked for defendant, Fearn International, Inc., and was represented in collective bargaining by his union. Fearn fired plaintiff for reporting to work while under the influence of alcohol or drugs, and the union filed a grievance on plaintiff's behalf protesting the discharge. After negotiations, the parties entered into a settlement agreement pursuant to which plaintiff would be reinstated contingent upon his successful completion of an alcohol abuse program. However, before completing that program, plaintiff was hospitalized for overdosing on PCP. Upon learning of plaintiff's use of PCP, Fearn deemed him in breach of the settlement agreement and terminated his employment for a second time. The union filed an action against Fearn to compel arbitration over the alleged breach of the settlement agreement. The district court ordered arbitration over the alleged breach of the settlement agreement, the second discharge. Fearn appealed, arguing that the alleged breach of the settlement agreement was not an

arbitrable subject. The Seventh Circuit found in favor of the union and held that a settlement agreement is an arbitrable subject when the underlying dispute is arbitrable, except in circumstances where the parties expressly exclude the settlement agreement from being arbitrated. The court went on to say:

> "We begin with the axiom that 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' [Citations.] But arbitration is favored and should be ordered 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' [Citation.] It is of course for the court to determine whether a dispute is subject to arbitration, unless the parties have 'clearly and unmistakably' established that an arbitrator is to determine issues of arbitrability.
>
> We conclude that a settlement agreement is an arbitrable subject when the underlying dispute is arbitrable, except in circumstances where the parties expressly exclude the settlement agreement from being arbitrated. To hold otherwise would eviscerate the usefulness of settlements reached in grievance and arbitration settings, by complicating what should be a relatively simple and cheap procedure." *Niro*, 827 F.2d at 175.

The court stated that in uncertain situations the presumption should favor arbitrability and that, if the parties desire that a settlement agreement should not be arbitrable, they may so prescribe. Fearn maintained, however, that the union had failed to pursue preliminary grievance procedures, but the court found that that alleged failure was an issue to be determined by the arbitrator, especially in view of the fact that the alleged violation of the settlement agreement by the employee was a subject the parties had intended to be a matter of arbitration. The court concluded that once it is determined that the underlying dispute concerns a subject matter covered by arbitration provisions, the court's only role is to order arbitration.

In the instant case, plaintiffs seek to distinguish *Niro* on the basis that it occurred within the confines of a collective bargaining context. They contend that *Niro* can only apply to collective bargaining situations because to do otherwise would make it unworkable, since certain employees would be exempt from the collective bargaining agreement's grievance and arbitration procedures simply because they had previously negotiated a settlement, which would defeat the entire purpose of the grievance scheme. They point out that the rule of *Niro* follows other labor relations cases which recognize that settlement agreements entered into in the context of resolving grievances of union employees are really "but a small part of the larger collective bargaining agreement" (see *L.O. Koven & Brother, Inc. v. Local Union No.*

*5767*, 381 F.2d 196 (3rd Cir. 1967); *Harrison F. Blades, Inc. v. Jarman Memorial Hospital Building Fund, Inc.*, 109 Ill. App. 2d 224, 227, 248 N.E.2d 289, 290-91 (1969)), and that *Niro's* rationale is inapplicable in an individual employment context, such as the one we have here, because there is no ongoing employer-union relationship. Furthermore, plaintiffs contend that the circuit court erred by applying federal labor law to what is essentially an individual contract case which, in turn, is governed by ordinary state contract law.

■ The Illinois Uniform Arbitration Act (the Act) (710 ILCS 5/1 *et seq.* (West 2000)) embodies a legislative policy favoring enforcement of agreements to arbitrate future disputes. *Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr*, 124 Ill. 2d 435 (1988). Accordingly, the Act empowers the circuit court, upon application of a party to a dispute, to compel or stay arbitration, or to stay court action pending arbitration. 710 ILCS 5/2 (West 2000); *United Cable Television Corp. v. Northwest Illinois Cable Corp.*, 128 Ill. 2d 301, 306 (1989).

■ The courts of this state favor arbitration. Arbitration is regarded as an effective, expeditious, and cost-efficient method of dispute resolution. *United Cable*, 128 Ill. 2d at 306. Thus, wherever possible, the courts construe arbitration awards so as to uphold their validity. *Rauh v. Rockford Products Corp.*, 143 Ill. 2d 377, 386 (1991). While arbitration is a favored method of dispute resolution, the courts have consistently cautioned that an agreement to arbitrate is a matter of contract. *Salsitz v. Kreiss*, 198 Ill. 2d 1 (2001). The United States Supreme Court has determined that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 4 L. Ed. 2d 1409, 1417, 80 S. Ct. 1347, 1353 (1960). However, the question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the "question of arbitrability," is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 154 L. Ed. 2d 491, 123 S. Ct. 588 (2002). The parties to an agreement are bound to arbitrate only those issues they have agreed to arbitrate, as shown by the clear language of the agreement and their intentions expressed in that language. *Rauh*, 143 Ill. 2d at 387.

■ In an interlocutory appeal, the scope of review is normally limited to an examination of whether the trial court abused its discretion in granting or refusing the requested interlocutory relief. Where the question presented is one of law, a reviewing court determines it independently of the trial court's judgment. *In re Lawrence M.*, 172 Ill. 2d 523, 526 (1996). Therefore, our standard of review is *de novo*.

We are unable to find any Illinois cases that squarely address the particular issue with which we are presented. Therefore, we must turn to other jurisdictions for some guidance. In *Riley Manufacturing Co. v. Anchor Glass Container Corp.*, 157 F.3d 775 (10th Cir. 1998), plaintiff, a manufacturer of "sun tea" jars with copyrighted ornamental designs stenciled on glass and plastic containers, and defendant, a supplier of glass jars, entered into a manufacturing agreement whereby plaintiff agreed to provide all of defendant's needs for sun tea jars and defendant agreed to use reasonable efforts to market plaintiff's sun tea products. Contained within this agreement was an arbitration clause to the effect that the parties agreed to submit any disputes to arbitration in Tampa, Florida. That agreement expired by its own terms and was not renewed. Subsequently, plaintiff discovered that defendant was selling various sun tea jars which incorporated several ornamental designs allegedly copied from its designs. Plaintiff threatened to file a copyright lawsuit against defendant, but the parties resolved their dispute by entering into a settlement agreement. Under that agreement plaintiff agreed to drop its threatened copyright lawsuit, and defendant agreed to drop any threatened counterclaims. The agreement included a release, which stated: "Anchor fully and forever releases and discharges Riley and its respective agents *** of and from any and all responsibilities, duties, obligations, claims, demands, debts, sums of money, accounts or causes of action or actions *** which Anchor or anyone claiming under, by or through it now has or could ever have become entitled to assert against any of the Releasees by reason of the claims raised in the Threatened Lawsuit or defenses thereto, or arising out of any of the following matters existing between the parties ***." *Riley*, 157 F.3d at 777 n.3. Also contained in that agreement was a merger clause, which read as follows: "This Agreement constitutes the entire agreement of the parties hereto and cancels, terminates and supersedes any and all prior representations and agreements relating to the subject matter thereof." *Riley*, 157 F.3d at 778. It should be noted that the settlement agreement did not include an arbitration provision or make reference to the arbitration clause in the manufacturing agreement or mention any other dispute resolution mechanisms.

Eight months later, plaintiff discovered that defendant was selling sun tea jars that plaintiff believed infringed upon three of its designs. Accordingly, plaintiff filed a lawsuit in federal court. In response, defendant filed a motion to dismiss or to stay that lawsuit on the grounds that it was invoking the arbitration clause of the manufacturing agreement. The district court ruled that the release in the settlement agreement released any obligation of plaintiff found in the

manufacturing agreement to submit its claims to arbitration. The court also cited the merger clause of the settlement agreement as "buttressing" its conclusion.

The Tenth Circuit held that, while the settlement agreement did not terminate the arbitration clause in the manufacturing agreement *in toto* as to certain specified items, the validity and enforceability of the arbitration agreement was for the courts to decide. Specifically, the court held:

> "[T]he existence of the merger clause in the Settlement Agreement raises at least an ambiguity on the question of the intent of the parties to allow an arbitrator to decide the validity of the 1991 arbitration clause. The merger clause expressly states that the Settlement Agreement 'cancels, terminates and supersedes' any prior agreement relating to the subject matter of the Manufacturing Agreement. *** [W]e do believe that this language raises legitimate questions as to the continuing existence and scope of the arbitration clause in the Manufacturing Agreement. Furthermore, the Settlement Agreement is noteworthy for its lack of an arbitration clause. Thus, because the Settlement Agreement creates an ambiguity on the question of arbitrability—an ambiguity that the Settlement Agreement does not expressly delegate to an arbitrator for resolution—we find that the question of whether an agreement to arbitrate continues to exist for Riley and Anchor Glass is for the courts." *Riley*, 157 F.3d at 780-81.

Similarly, in the case of *Borough of Atlantic Highlands v. Eagle Enterprises, Inc.*, 312 N.J. Super. 188, 711 A.2d 407 (1998), the parties entered into a construction contract for the construction of an emergency services building. That contract contained an arbitration clause which provided, in pertinent part:

> "Any controversy or Claim arising out of or related to the Contract, or the breach thereof, shall be settled by arbitration." *Borough of Atlantic*, 312 N.J. Super. at 193, 711 A.2d at 409.

A dispute arose over the delay of the project, and plaintiff threatened to assess $60,000 as damages. However, the parties resolved their differences, resulting in the preparation and execution of a "Final Agreement," which read as follows:

> "[The parties] hereby agree that the $12,500 deduction (credit) *** is in full settlement of any and all claims by either party for damages by reason of delay or late completion of the project. *** [The parties] agree *** *this Agreement constitutes the full and final satisfaction of all claims for compensation and neither party has any further claims for compensation or damages against the other.*" (Emphasis added.) *Borough of Atlantic*, 312 N.J. Super. at 191, 711 A.2d at 408-09.

Two months after the execution of the Final Agreement, defendant rescinded it in a letter addressed to plaintiff alleging "duress" as the reason for its prior acceptance and filed its formal demand for arbitration in accordance with the terms of the original construction contract. That demand did not mention the Final Agreement or defendant's claim that it was induced to execute the agreement by reason of fraud or economic duress. Plaintiff instituted an action to enjoin the arbitration proceedings. The trial court held that the Final Agreement did not abrogate the initial arbitration clause. In reversing the trial court, the New Jersey appellate court found that the original construction contract, which included the arbitration clause, was knowingly canceled and settled-out by virtue of the Final Agreement in clear and unambiguous language. The court went on to say:

"[T]here is no claim of fraud or economic duress in the inducement of the original construction contract between plaintiff and defendant. Defendant's claim relates to fraud or economic duress solely in the inducement of the Final Agreement which, significantly, does not contain an arbitration clause. Hence *** defendant's claim, since it only seeks to vitiate an agreement which does not contain an arbitration clause, must first be addressed in a court of general jurisdiction. *** If it is found that the Final Agreement was induced by fraud or economic duress, then defendant may arbitrate its claim for additional monies in accordance with its demand for arbitration.

In sum, our determination is that the parties never agreed to submit this particular dispute to arbitration. The Final Agreement, which we assume to be binding, unambiguously on its face was intended to operate as a general release. Nothing was left for arbitration. Any change in this posture of the case must come from a judicial ruling." *Borough of Atlantic*, 312 N.J. Super. at 194, 711 A.2d at 410.

■ We find the rulings in *Riley* and *Borough* to be persuasive. In the case at bar, the settlement agreement states that defendant agrees to release any and all claims against plaintiff relating to or arising from their association and defendant's employment. That language, which operates as a general release, is clear and unambiguous, and we are at a loss as to how we might interpret it to mean anything other than that the original employment agreement was to be regarded as history. See *Borough of Atlantic*, 312 N.J. Super. at 193, 711 A.2d at 410. Furthermore, the settlement agreement does not contain an arbitration clause, so it is clear that the parties never intended to submit this particular dispute to arbitration. Therefore, since Buck is seeking to vitiate the settlement agreement, which does not contain an arbitration clause, his claim must first be addressed in court, not

by an arbitrator. To put it another way, the question of whether an agreement to arbitrate continues to exist for plaintiffs and Buck is a question to be resolved by the court, not an arbitrator.

We agree with plaintiffs' analysis that *Niro* and other labor law cases must be read within the context of the collective bargaining situation. If there is an outstanding collective bargaining agreement between a union and an employer, obviously the terms of the agreement as it relates to arbitration must remain in force despite the existence of an individual settlement agreement. However, in a private employment situation such as we have here, there is no ongoing employer-union relationship wherein an individual settlement agreement could arguably extinguish the overarching agreement to arbitrate between an employer and a union contained within a collective bargaining agreement.

We, therefore, reverse and remand this case with instructions that the circuit court is to address Buck's claims that he entered into the settlement agreement under duress. If the court finds in favor of Buck, thereby vitiating the settlement agreement, it is instructed to once again deny plaintiff's motion to stay the arbitration proceedings, and the matter may proceed to arbitration in accordance with the terms of the original employment agreement. If, however, the court finds Buck's claims of duress in the inducement of the settlement agreement and unconscionability to be without merit and that the settlement agreement is viable and in force, it is instructed to grant plaintiff's motion to stay the arbitration proceedings.

Based upon our ruling, we need not address plaintiffs' second issue. However, in the event the trial court determines that the settlement agreement is vitiated by reason of duress in the inducement and that the matter should proceed to arbitration, it is advised to conduct an evidentiary hearing with respect to Stonebridge and its status as a signatory to the employment agreement. When the trial court determined that Stonebridge could be bound by the employment agreement, its stated reason was that it was not clear whether Robert Raziano, the chairman of the board of Icon, had signed the employment agreement on behalf of Stonebridge and Icon. Plaintiffs argue on appeal that Raziano is the chairman of the board of Icon but not of Stonebridge. However, there is insufficient evidence contained in this record for us to resolve this issue.

Accordingly, the judgment of the circuit court is reversed and remanded with instructions.

Reversed and remanded.

HOFFMAN, P.J., and KARNEZIS, J., concur.