# Illinois Official Reports

## Appellate Court

<div style="border">

*Amalgamated Transit Union, Local 241 v. Chicago Transit Authority*,
**2014 IL App (1st) 122526**

</div>

| | |
|---|---|
| Appellate Court Caption | AMALGAMATED TRANSIT UNION, LOCAL 241, Petitioner-Appellant, v. CHICAGO TRANSIT AUTHORITY, Respondent-Appellee. |
| | |
| District & No. | First District, First Division<br>Docket No. 1-12-2526 |
| | |
| Rule 23 Order filed<br>Rule 23 Order<br>withdrawn<br>Opinion filed | January 21, 2014<br><br>March 3, 2014<br>March 17, 2014 |
| | |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | A petitioning union's action seeking to compel arbitration of respondent transportation authority's decision to abolish the position of construction inspector was properly dismissed, notwithstanding the fact that two union members with many years of service were terminated as a result, since the abolishment of the position was conducted pursuant to the Metropolitan Transit Authority Act, a statute distinct from the parties' collective bargaining agreement, and the decision was not related to any of the terms of the parties' collective bargaining agreement or subject to arbitration under the agreement. |
| | |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CR-5504; the Hon. Lee Preston, Judge, presiding. |
| | |
| Judgment | Affirmed. |

Counsel on
Appeal

Jacobs, Burns, Orlove & Hernandez, of Chicago (David Huffman-Gottschling, of counsel), for appellant.

Schuyler, Roche & Crisham, P.C., of Chicago (James P. Daley, David M. Novak, and James D. Thomas, of counsel), for appellee.

Panel

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.
Presiding Justice Connors and Justice Hoffman concurred in the judgment and opinion.

**OPINION**

¶ 1     This appeal arises from a July 9, 2012 order entered by the circuit court of Cook County which dismissed, with prejudice, the petition to compel arbitration filed by petitioner-appellant Amalgamated Transit Union, Local 241 (Local 241). On appeal, Local 241 argues that: (1) the trial court erred in dismissing its petition to compel arbitration because the parties agreed to arbitrate the grievance which alleged violations of the parties' collective bargaining agreement (CBA); (2) the trial court erred in dismissing its petition to compel arbitration because section 28 of the Metropolitan Transit Authority Act (70 ILCS 3605/28 (West 2010)) did not extinguish respondent-appellee, Chicago Transit Authority's (CTA) duty to collectively bargain with Local 241; and (3) the doctrines of *res judicata* and collateral estoppel did not bar its petition to compel arbitration. For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 2                                      BACKGROUND

¶ 3     CTA is a political subdivision, body politic, and municipal corporation created under the laws of the state of Illinois that provides mass public transportation for the people of the metropolitan area of Chicago. Local 241, along with Amalgamated Transit Union, Local 308 (Local 308),[1] are the sole and exclusive bargaining agents for all of CTA's employees except for certain executive, professional, supervisory, and confidential personnel. CTA, Local 241 and Local 308 are all parties to the CBA. According to its terms, the CBA was in full force and effect from January 1, 2007 until December 31, 2011, and from year to year thereafter. On November 15, 2011, CTA passed ordinance No. 011-142, which abolished the employment position of "Construction Inspector IV" (construction inspector position). The abolishment of the construction inspector position caused the termination of 27-year CTA employee James Gress (Gress), and 19-year CTA employee Jeffrey Sojka (Sojka). Ordinance No. 011-142 was passed pursuant to section 28 of the Metropolitan Transit Authority Act. The Metropolitan Transit Authority Act mandates that the Chicago Transit Board (Board) is the governing and administrative body of CTA. 70 ILCS 3605/19 (West 2010). Section 28 of the Metropolitan Transit Authority Act states, in pertinent part, as follows:

_____
[1]Local 308 is not a party to this appeal.

"The Board may abolish any vacant or occupied office or position. Additionally, the Board may reduce the force of employees for lack of work or lack of funds as determined by the Board. *** When employees are represented by a labor organization that has a labor agreement with [CTA], the wages, hours, and working conditions (including, but not limited to, seniority rights) shall be governed by the terms of the agreement." 70 ILCS 3605/28 (West 2010).

¶ 4    On November 17, 2011, Local 241 submitted a grievance to CTA on behalf of Gress and Sojka. The grievance alleged that the abolishment of the construction inspector position violated sections 2.7 and 12.8 of the CBA. Sections 2.7 and 12.8 of the CBA state as follows:

"2.7 SUBCONTRACTING [CTA] shall not subcontract or assign to others work which is normally and regularly performed by employees within the collective bargaining unit of Local 241 or of Local 308 ***.

* * *

12.8 LAYOFFS In all cases where employees are laid off to reduce the force, they shall be laid off according to seniority, and when they are put back on, they shall be reinstated according to his or her seniority standing at the time he or she was laid off.

During the term of the Agreement, there shall be no layoff of any permanent, full-time bargaining unit employee who on January 1, 2000 had one (1) or more years of continuous service."

¶ 5    On December 1, 2011, CTA partially denied Local 241's grievance. On December 8, 2011, CTA denied Local 241's grievance in its entirety. On or around January 19, 2012, Local 241 requested arbitration to resolve the grievance. The arbitration procedure between the parties is governed by section 17 of the CBA, which states, in pertinent part, as follows:

"17.1 ARBITRATION If the grievance is not resolved *** and [Local 241] or [CTA] wishes to appeal the grievance, [Local 241] or [CTA] may refer the grievance to arbitration within ninety (90) calendar days of receipt of [CTA's] written Response provided to [Local 241].

* * *

17.3 DECISION The decision of a majority of the arbitration committee shall be final, binding, and conclusive upon [Local 241] and [CTA]. The authority of the arbitrators shall be limited to the construction and application of the specific terms of this Agreement and or to the matters referred to them for arbitration. They shall have no authority or jurisdiction directly or indirectly to add to, subtract from or amend any of the specific terms of the Agreement or to impose liability not specifically expressed herein."

¶ 6    Despite Local 241's request for arbitration, CTA refused to arbitrate. On February 16, 2012, Local 241 filed a petition to compel arbitration in the chancery division of the circuit court of Cook County. On April 23, 2012, CTA filed a motion to dismiss Local 241's petition to compel arbitration pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2010)). In its motion, CTA argued that Local 241's petition to compel arbitration should be dismissed because: (1) the Board's power to abolish a position is derived from outside the CBA, and any dispute over such power is not a dispute concerning the administration or interpretation of the CBA; (2) the power to abolish a position is granted solely and exclusively to the Board through section 28 of the Metropolitan Transit Authority Act, and such power is not subject to arbitration under the CBA; and (3) a prior arbitrator has

already decided that terminations resulting from the abolishment of employment positions are not considered layoffs. On July 9, 2012, the trial court entered an order which dismissed with prejudice Local 241's petition to compel arbitration. The court found that Local 241's petition alleged no facts that showed that the terms of the CBA were breached. Also, the trial court found that, despite the terms of the CBA, the matter was controlled by CTA's power to abolish a position as provided by section 28 of the Metropolitan Transit Authority Act. The court reasoned that it is bedrock principle of Illinois law that a contract cannot contravene a statute. Finally, the court found that *res judicata* did not apply in this case, and the prior arbitrator's ruling did not dictate the outcome of the case. Thus, the court concluded that there was no set of facts under which the complaint could stand.

¶ 7        On August 7, 2012, Local 241 timely filed a notice of appeal. However, the notice of appeal was inadvertently stamped with the date September 7, 2012, rather than August 7, 2012. As a result of the erroneous date stamp, Local 241's appeal was not initially docketed. Likewise, Local 241's docketing statement was not accepted by the clerk of the appellate court. On August 31, 2012, Local 241 filed an unopposed motion in this court for leave to file an amended docketing statement or, in the alternative, for an extension of time in which to file a notice of appeal. On September 14, 2012, this court granted Local 241's motion and directed the clerk of the appellate court to "docket the instant appeal and accept for filing *instanter* [Local 241's] amended docketing statement submitted with its motion, which filing is deemed timely submitted." Therefore, Local 241 timely filed its notice of appeal and this court has jurisdiction to consider its arguments on appeal pursuant to Illinois Supreme Court Rule 303 (eff. May 30, 2008).

¶ 8                                                    ANALYSIS

¶ 9        We determine the following issues on appeal: (1) whether the doctrines of *res judicata* and collateral estoppel applied to bar Local 241's petition to compel arbitration; (2) whether the trial court erred in dismissing Local 241's petition to compel arbitration because the parties agreed to arbitrate the grievance which alleged violations of the CBA; and (3) whether the trial court erred in dismissing Local 241's petition to compel arbitration because section 28 of the Metropolitan Transit Authority Act did not extinguish CTA's duty to collectively bargain with Local 241.

¶ 10       We first determine whether the doctrines of *res judicata* and collateral estoppel applied to bar Local 241's petition to compel arbitration.

¶ 11       Both parties present arguments regarding whether the doctrines of *res judicata* and collateral estoppel applied to bar Local 241's petition to compel arbitration based on a prior arbitration award. From October 1981 through December 1981, Local 241 and CTA were parties to arbitration hearings regarding CTA's elimination of its security department. Local 241 argued that the elimination of the security department violated the CBA that existed between the parties at that time. On April 30, 1982, the arbitrator issued an arbitration award which dismissed Local 241's grievance because no contractual violation of the CBA was found. Notably, the arbitrator found that permanently terminating employees is a different act than laying off employees. Accordingly, the parties disagree about whether the findings of the arbitrator in the prior arbitration bar Local 241 from arguing that the abolishment of the construction inspector position violated the layoff provisions of section 12.8 of the CBA.

¶ 12 "Generally, arbitration awards have the same *res judicata* and collateral estoppel effect as court judgments." *Peregrine Financial Group, Inc. v. Martinez*, 305 Ill. App. 3d 571, 578 (1999). Collateral estoppel is an equitable doctrine that promotes fairness and judicial economy by preventing the relitigation of issues that have already been resolved in earlier actions. *Du Page Forklift Service, Inc. v. Material Handling Services, Inc.*, 195 Ill. 2d 71, 77 (2001). In order for collateral estoppel to be applied, the following requirements must be met: (1) the issue decided in the prior adjudication is identical with the one presented in the current action; (2) there was a final judgment on the merits in the prior adjudication; (3) the party against whom estoppel is asserted was a party to, or in privity with a party to, the prior adjudication; and (4) the factual issue against which the doctrine is interposed was actually and necessarily litigated and determined in the prior adjudication. *Peregrine Financial Group, Inc.*, 305 Ill. App. 3d at 581. "The party asserting the doctrine of collateral estoppel bears the 'heavy burden' of demonstrating with clarity and certainty what the prior judgment determined." *Id*. If there is any uncertainty because the court is presented with more than one distinct issue of fact, collateral estoppel will not be applied. *Id*. Whether the doctrine of collateral estoppel is applicable in a particular case is a question of law that this court reviews under the *de novo* standard of review. *State Building Venture v. O'Donnell*, 239 Ill. 2d 151, 158 (2010).

¶ 13 "The doctrine of *res judicata*, also known as 'estoppel by judgment,' provides that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand, or cause of action." *Best Coin-Op, Inc. v. Paul F. Ilg Supply Co.*, 189 Ill. App. 3d 638, 649 (1989). The doctrine of *res judicata* consists of the following essential elements: (1) an identity of parties or their privies in the two suits; (2) an identity of causes of action in the earlier and later suit; and (3) a final judgment on the merits in the earlier suit. *Id*. at 650. Whether *res judicata* bars a subsequent claim is a question of law, which is reviewed *de novo*. *Northeast Illinois Regional Commuter R.R. Corp. v. Chicago Union Station Co.*, 358 Ill. App. 3d 985, 1000 (2005).

¶ 14 We find the doctrines of *res judicata* and collateral estoppel to be inapplicable to the instant case. As Local 241 argues, the issues decided in the prior arbitration and the issues in the instant case are not identical. In the prior arbitration, CTA eliminated its security department because the Chicago police department had assumed all security functions for CTA. This is far different from the situation in this case where CTA abolished its construction inspector position without any mention of nonunion employees assuming the responsibilities of the abolished position. Moreover, the arbitrator in the prior arbitration interpreted a different CBA with different contract provisions than the CBA that is at issue in this case. Therefore, the requirements of *res judicata* and collateral estoppel are not met. We hold that those doctrines are inapplicable to bar Local 241's petition to compel arbitration.

¶ 15 We next determine whether the trial court erred in dismissing Local 241's petition to compel arbitration because the parties agreed to arbitrate the grievance which alleged violations of the CBA.

¶ 16 Local 241 argues that the trial court erred in dismissing its petition to compel arbitration because the CBA calls for mandatory arbitration when grievances are unresolved. Local 241 points out that its grievance alleged that CTA's abolishment of the construction inspector position violated sections 2.7 and 12.8 of the CBA. Section 2.7 of the CBA prohibits CTA from subcontracting union work to nonunion employees, and section 12.8 of the CBA

prohibits CTA from laying off union employees with one or more years of employment with CTA as of January 1, 2000. CTA refused to arbitrate the grievance, which caused Local 241 to file its petition to compel arbitration. Local 241 contends that because its grievance alleged violations of the CBA, the trial court should not have dismissed its petition to compel arbitration. Local 241 asserts that the issue in this case is not whether this court would grant or deny its grievance. Rather, the issue is whether Local 241's petition to compel arbitration presented a legally and factually sufficient claim. Local 241 argues that its petition presented a legally and factually sufficient claim because a set of facts could be proved under the pleadings which would entitle it to relief.

¶ 17    Additionally, Local 241 argues that Illinois public policy conflicts with the trial court's dismissal of its petition to compel arbitration. Local 241 points out that in Illinois, there is a presumption in favor of arbitration and courts must uphold the validity of a CBA's arbitration clause if at all possible. Local 241 also emphasizes that when reviewing the trial court's ruling on a motion to dismiss, this court must accept as true all well-pleaded facts and construe the allegations in the complaint in the light most favorable to the plaintiff. Thus, Local 241 argues that considering Illinois public policy and the applicable standard of review, this court must construe the grievance in this case as arbitrable. Further, Local 241 asserts that Illinois law states that if this court is unclear as to whether the grievance is arbitrable, then the question of arbitrability should be decided by an arbitrator. Thus, Local 241 contends that this court can only affirm the judgment of the trial court if, after taking into account the presumption in favor of arbitration and the applicable standard of review, this court finds definitively that the grievance *is not* arbitrable. Accordingly, Local 241 argues that the trial court erred in dismissing with prejudice its petition to compel arbitration.

¶ 18    In response, CTA argues that the trial court correctly dismissed Local 241's petition to compel arbitration because the parties did not agree to arbitrate the dispute in this case. CTA argues that the true dispute in this case is whether the parties are required to arbitrate the abolishment of the construction inspector position. CTA points out that section 17.3 of the CBA states that the authority of the arbitrators is limited to the construction and application of the specific terms of the CBA and that the arbitrators have no authority to add to, subtract from, or amend any of the specific terms of the CBA. However, CTA emphasizes that its power to abolish the construction inspector position is derived from section 28 of the Metropolitan Transit Authority Act, which is a statute separate from the CBA. CTA also notes that the CBA does not incorporate section 28 of the Metropolitan Transit Authority Act. Thus, CTA contends that a dispute over the abolishment of the construction inspector position under section 28 of the Metropolitan Transit Authority Act arises outside the terms of the CBA and the arbitrators would have no authority to consider such a dispute. Further, CTA asserts that because the true dispute in this case is whether the parties are required to arbitrate the abolishment of the construction inspector position, there are no issues regarding the subcontracting or layoff provisions of the CBA. Accordingly, CTA argues that the trial court did not err in dismissing with prejudice Local 241's petition to compel arbitration.

¶ 19    A motion to dismiss pursuant to section 2-615 of the Code challenges the legal sufficiency of the complaint by alleging that there are defects on the face of the complaint. *Vitro v. Mihelcic*, 209 Ill. 2d 76, 81 (2004). When the court rules on a motion to dismiss, all well-pleaded facts in the complaint and all reasonable inferences therefrom are accepted as true. *Weatherman v. Gary-Wheaton Bank of Fox Valley, N.A.*, 186 Ill. 2d 472, 491 (1999). "The critical inquiry is whether the allegations of the complaint, when construed in the light

most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted." *Vitro*, 209 Ill. 2d at 81. This court reviews the trial court's order granting a motion to dismiss under the *de novo* standard of review. *Id.*

¶ 20 Illinois courts favor arbitration. *ACME-Wiley Holdings, Inc. v. Buck*, 343 Ill. App. 3d 1098, 1103 (2003). Thus, Illinois courts construe arbitration awards so as to uphold their validity wherever possible. *Id.* "While arbitration is a favored method of dispute resolution, the courts have consistently cautioned that an agreement to arbitrate is a matter of contract." *Id.* Thus, as a general rule, the parties to an agreement are bound to arbitrate only the issues which they have agreed to arbitrate, as shown by the clear language of the agreement and their intentions expressed in the language of the agreement. *Id.* "[A]rbitration agreements cannot be extended by construction or implication." *Rauh v. Rockford Products Corp.*, 143 Ill. 2d 377, 387 (1991). Under Illinois law, the venue that decides the arbitrability of a dispute depends on the complexity of the issue. *Carey v. Richards Building Supply Co.*, 367 Ill. App. 3d 724, 726 (2006). "If the arbitration agreement is clear as to whether a dispute should be arbitrated, the trial court makes the initial determination. [Citation.] If, on the other hand, the language of the agreement is broad and it is unclear whether the dispute falls within the agreement's scope, the determination should be made by an arbitrator." *Id.*

¶ 21 We note that because this case involves a public employee labor dispute, it is governed by the Illinois Public Labor Relations Act (Public Labor Relations Act) (5 ILCS 315/1 *et seq.* (West 2010)). *City of Rockford v. Unit Six of the Policemen's Benevolent & Protective Ass'n*, 351 Ill. App. 3d 252, 256 (2004). "[T]he relevant inquiry in a case arising under the Public Labor Relations Act is whether the parties, through their written agreement, showed an intent to exclude from arbitration the disputed matter." *Id.* at 257. Thus, we determine whether the parties in this case intended to exclude from arbitration the abolishment of the construction inspector position.

¶ 22 In order to determine whether the parties intended to exclude from arbitration the abolishment of the construction inspector position, we must first determine whether the abolishment was governed by the terms of the CBA. Local 241 argues that the abolishment of the construction inspector position violated sections 2.7 and 12.8 of the CBA. We disagree. Section 2.7 of the CBA prohibits CTA from subcontracting union work to nonunion employees. As the trial court stated in its order dismissing Local 241's petition to compel arbitration, Local 241 has not alleged any facts to show that this case addresses the assignment of work to outside contractors. Local 241 showed that the abolishment of the construction inspector position caused Gress and Sojka to be terminated. However, there is nothing in Local 241's grievance or petition to compel arbitration that suggests that CTA intended to replace Gress and Sojka, or that CTA intended to subcontract Gress's and Sojka's employment responsibilities to nonunion employees. Although Local 241's grievance and petition alleged that the abolishment of the construction inspector position violated section 2.7 of the CBA, there are simply no facts to support that allegation. Therefore, Local 241's petition to compel arbitration did not present a sufficient claim as to the violation of section 2.7 of the CBA.

¶ 23 Likewise, we are unpersuaded by Local 241's argument that the abolishment of the construction inspector position violated section 12.8 of the CBA. Section 12.8 prohibits CTA from laying off union employees with one or more years of employment with CTA as of January 1, 2000. The language of section 12.8 of the CBA establishes that layoffs shall occur according to seniority, and section 12.8 dictates the way that laid-off employees are reinstated. However, the abolishment of the construction inspector position was not an action that

involved layoffs. Gress's and Sojka's employment position was simply abolished; ordinance No. 011-142 provided no mention of their seniority status and no intent to reinstate them at any time. The abolishment of the construction inspector position was an action that is separate and distinct from the actions that are governed by section 12.8 of the CBA. Similar to Local 241's allegation regarding section 2.7 of the CBA, there are simply no facts to support the allegation that CTA violated section 12.8 of the CBA. Therefore, Local 241's petition to compel arbitration did not present a sufficient claim as to the violation of section 12.8 of the CBA. Notably, Local 241 has not presented any other provisions within the CBA that relate to the abolishment of the construction inspector position. Thus, the abolishment of the construction inspector position was not governed by the terms of the CBA.

¶ 24 Now that we have established that the abolishment of the construction inspector position was not governed by the terms of the CBA, we must determine whether the parties intended to exclude the abolishment from arbitration. We note that CTA argues that this case is analogous to *City of Rockford v. Unit Six of the Policemen's Benevolent & Protective Ass'n*, 351 Ill. App. 3d 252 (2004). We agree. *City of Rockford* involved the arbitrability of grievances filed by the defendant under the CBA executed by the parties. *City of Rockford*, 351 Ill. App. 3d at 253. The grievance alleged that the plaintiff-employer did not provide two police officers with workers' compensation benefits for the portion of their earnings attributable to their off-duty employment. *Id*. The trial court found that the dispute was subject to arbitration. *Id*. at 255. On appeal, this court reversed the trial court's judgment and held that the parties agreed that the matter of workers' compensation benefits would not be subject to arbitration. *Id*. at 258. This court reasoned that the CBA did not make any reference to workers' compensation benefits, and the CBA stated that the arbitrators were limited to interpreting and determining compliance with the CBA. *Id*. This court also noted that the grievance process was limited to the terms of the CBA. *Id*. Thus, this court held that matters concerning workers' compensation benefits were not arbitrable under the parties' CBA. *Id*.

¶ 25 We find *City of Rockford* to be instructive. In this case, it is clear that the parties intended to exclude from arbitration the abolishment of the construction inspector position. Section 17.3 of the CBA states that the authority of the arbitrators is limited to the construction and application of the specific terms of the CBA and that the arbitrators have no authority to add to, subtract from, or amend any of the specific terms of the CBA. Since the abolishment of the construction inspector position does not relate to *any* of the terms of the CBA, the arbitrators would have no authority to rule on the abolishment. Moreover, the abolishment of the construction inspector position was conducted pursuant to section 28 of the Metropolitan Transit Authority Act, which is a statute that is separate and distinct from the CBA. It follows that the parties intended to exclude from arbitration acts such as the abolishment of the construction inspector position because it is outside the authority of the arbitrators, and is derived from a statute outside the scope of the CBA. Therefore, the abolishment of the construction inspector position was not subject to arbitration under the terms of the CBA. Accordingly, we hold that the trial court did not err in dismissing with prejudice Local 241's petition to compel arbitration based on the argument that the parties agreed to arbitrate the grievance.

¶ 26 We next determine whether the trial court erred in dismissing Local 241's petition to compel arbitration because section 28 of the Metropolitan Transit Authority Act did not extinguish CTA's duty to collectively bargain with Local 241.

¶ 27 Local 241 argues that the trial court erred in dismissing its petition to compel arbitration because CTA had a duty to bargain with Local 241 over wages, hours, and other conditions of

employment pursuant to section 7 of the Public Labor Relations Act (5 ILCS 315/7 (West 2010)). Local 241 asserts that the abolishment of the construction inspector position qualifies as a "condition of employment." Local 241 contends that although section 28 of the Metropolitan Transit Authority Act grants CTA the power to abolish employment positions, CTA still must comply with its duty to bargain over conditions of employment. In fact, Local 241 points out that in addition to granting CTA the power to abolish employment positions, section 28 of the Metropolitan Transit Authority Act states that when employees are represented by a labor organization that has an agreement with CTA, the wages, hours and working conditions shall be governed by the terms of the agreement. Thus, Local 241 asserts that when read together, both the Metropolitan Transit Authority Act and Public Labor Relations Act require CTA to bargain with Local 241 over conditions of employment. Further, Local 241 argues that CTA satisfied its bargaining requirement by negotiating the contractual language of sections 2.7 and 12.8 of the CBA. Local 241 asserts that because its grievance invokes sections 2.7 and 12.8 of the CBA, its grievance is arbitrable. Accordingly, Local 241 argues that the trial court erred in dismissing its petition to compel arbitration because CTA had a duty to bargain with Local 241.

¶ 28 In response, CTA argues that the legislative grant of power to abolish employment positions provided by section 28 of the Metropolitan Transit Authority Act, is a nondelegable power that cannot be superseded by the CBA. CTA asserts that Local 241's grievance, which requests that "CTA not be allowed to abolish [the construction inspector position]," is an impermissible attack on its statutory power. Further, CTA argues that Local 241 misinterprets section 7 of the Public Labor Relations Act. CTA claims that section 7 of the Public Labor Relations Act allows for laws that limit the duty to bargain. CTA contends that section 28 of the Metropolitan Transit Authority Act is a law that limits the duty to bargain under section 7 of the Public Labor Relations Act. Therefore, CTA argues that the trial court did not err in dismissing Local 241's petition to compel arbitration.

¶ 29 Section 7 of the Public Labor Relations Act states, in pertinent part:

"§ 7. Duty to Bargain. A public employer and the exclusive representative have the authority and the duty to bargain collectively set forth in this Section.

\*\*\*

The duty 'to bargain collectively' shall also include an obligation to negotiate over any matter with respect to wages, hours and other conditions of employment, not specifically provided for in any other law or not specifically in violation of the provisions of any law. If any other law pertains, in part, to a matter affecting the wages, hours and other conditions of employment, such other law shall not be construed as limiting the duty 'to bargain collectively' and to enter into collective bargaining agreements containing clauses which either supplement, implement, or relate to the effect of such provisions in other laws." 5 ILCS 315/7 (West 2010).

¶ 30 Section 28 of the Metropolitan Transit Authority Act states, in pertinent part:

"The Board may abolish any vacant or occupied office or position. Additionally, the Board may reduce the force of employees for lack of work or lack of funds as determined by the Board. \*\*\* When employees are represented by a labor organization that has a labor agreement with [CTA], the wages, hours, and working conditions (including, but not limited to, seniority rights) shall be governed by the terms of the agreement." 70 ILCS 3605/28 (West 2010).

¶ 31　　　　When construing a statute, the primary objective is to give effect to the true intent and meaning of the legislature. *Ferguson v. McKenzie*, 202 Ill. 2d 304, 311 (2001). In determining legislative intent, the language of the statute is the most reliable indicator and the language must be given its plain, ordinary and popularly understood meaning. *Alvarez v. Pappas*, 229 Ill. 2d 217, 228 (2008). "Where there is an alleged conflict between two statutes, a court has a duty to interpret those statutes in a manner that avoids an inconsistency and gives effect to both statutes, where such an interpretation is reasonably possible." *Ferguson*, 202 Ill. 2d at 311-12.

¶ 32　　　　Notwithstanding the parties' numerous arguments, we do not find a conflict between section 7 of the Public Labor Relations Act and section 28 of the Metropolitan Transit Authority Act as they relate to the CBA and the abolishment of the construction inspector position.[2] Section 7 of the Public Labor Relations Act requires the parties to bargain collectively over conditions of employment and states that laws that pertain, in part, to a matter affecting conditions of employment shall not limit the duty to bargain. Section 28 of the Metropolitan Transit Authority Act states that working conditions shall be governed by the terms of the CBA. The statutes at issue relate to the duty to *bargain collectively*. Nothing in either statute states that the parties must *arbitrate* issues that are outside the terms of the CBA. This is not a situation in which Local 241 argues that CTA committed an unfair labor practice by refusing to bargain over conditions of employment. Rather, Local 241 claims that CTA *fulfilled* its bargaining requirement by negotiating and executing the CBA. Local 241's argument is based on the notion that the abolishment of the construction inspector position violated sections 2.7 and 12.8 of the CBA. As previously discussed, we are not persuaded by that argument. We need not discuss whether the CBA attempted to override CTA's powers under section 28 of the Metropolitan Transit Authority Act because the abolishment of the construction inspector position did not relate to any of the terms of the CBA. Accordingly, we hold that the trial court did not err in dismissing Local 241's petition to compel arbitration based on the duty to bargain collectively.

¶ 33　　　　For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 34　　　　Affirmed.

---

[2]We note that both parties present arguments related to the way this court should interpret section 28 of the Metropolitan Transit Authority Act. Both parties highlight certain portions of the statute and attempt to ascribe alternate and underlying meanings to the provisions of the statute. We are not persuaded by these arguments, nor are they relevant to the resolution of this case.